**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DACIA TALBOT, | : | NO. 4:24-CV-00457 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (CAMONI, M.J.) |
| FRANK BISIGNANO,[1] | : | |
| *Commissioner of Social Security,* | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

This is an action brought under 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Dacia Talbot's claim for supplemental security income benefits under Title XVI of the Social Security Act. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference). For the reasons stated herein, the Court will affirm the decision of the Commissioner.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action is needed to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Procedural History

On September 23, 2020, Talbot applied for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"), alleging disability as of February 29, 2020. Transcript, doc. 9-3 at 23. Following an initial denial, Talbot submitted an appeal, requesting a hearing before an Administrative Law Judge (ALJ). Doc. 9-4 at 18. The ALJ conducted the hearing and determined that Talbot is not disabled. Doc. 9-2 at 31, 39.

Talbot filed a request for review of the ALJ's decision, which the Appeals Council denied. *Id.* at 2. The ALJ's decision, therefore, became the final decision of the Commissioner. 42 U.S.C. § 405(g). Pending before this Court is Talbot's action seeking judicial review of the Commissioner's decision. Complaint, doc. 1. This case is fully briefed (docs. 14, 20, 21) and ripe for resolution. The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including entry of final judgment. Consent Form, doc. 7.

## B.   The Disability Determination Process

To receive disability benefits under the Social Security Act ("Act"), a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable . . . impairment which can . . . result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant is disabled "only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A). An impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." § 423(d)(3).

Social Security regulations provide a "five-step sequential evaluation process" to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Secretary to show that the claimant can perform substantial gainful employment other

than the claimant's past relevant work. *Williams v. Sullivan*, 970 F.2d 1178, 1181 (3d Cir. 1992), citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

At the first step, the claimant must establish that he has not engaged in substantial gainful activity since the onset of the alleged disability. *See* § 416.920(a)(4)(i). At the second step, claimant must establish that he suffers from a "severe medically determinable . . . impairment that meets the duration requirement . . . ("impairment . . . must have lasted or must be expected to last for a continuous period of at least 12 months")." § 416.920(a)(4)(ii). At the third step, the claimant must provide evidence that his impairment "meets or equals one of our listings in appendix 1." § 416.920(a)(4)(iii). If the claimant demonstrates his impairments meet those listings, he is considered to be disabled. *See id.*; § 416.920(d). If he cannot establish severity of impairment at the third step, the eligibility analysis proceeds to step four in which the ALJ determines whether the claimant's residual functional capacity ("RFC") allows the claimant to continue his previous employment. § 416.920(a)(4)(iv). RFC "is the most [a claimant] can still do despite" impairments. § 416.945(a)(1). To prevail on step four, claimant's

"impairment(s) must prevent [him] from doing . . . past relevant work." § 416.920(f). At the fifth step, the Commissioner bears the burden to demonstrate that the claimant's RFC and his "age, education, and work experience . . . [allows] adjustment to other work." § 416.920(a)(4)(v). If the Commissioner cannot satisfy this burden, the claimant's claim is granted. *See* § 416.920(g).

### C.    The ALJ's Decision

Here, the ALJ determined that Talbot "has not been under a disability, . . . since September 23, 2020, the date the application was filed." *Id.* at 31. The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. § 416.920(a)(4)(i)–(v); *see* Doc. 9-2 at 19-31.

At step one, the ALJ determined that Talbot "has not engaged in substantial gainful activity since September 23, 2020, the application date." Doc. 9-2 at 19. At step two, the ALJ found that Talbot has the following severe impairments: thyroid neoplasm, Grave's disease, cardiac arrhythmia, tachycardia, osteoarthritis of the right knee, migraines, and obesity. *Id.* At step three, the ALJ determined that Talbot "does not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in" 20 C.F.R. part 404, subpart P, appendix 1. *Id.* at 21.

Between steps three and four, the ALJ found that Talbot has the following RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch or crawl. The claimant can tolerate frequent exposure to unprotected heights and extreme heat. She can frequently operate hazardous machinery. The claimant can tolerate a loud noise environment.

*Id.* at 23.

At step four, the ALJ determined that Talbot "is unable to perform any past relevant work." *Id.* at 30. At step five, the ALJ determined that considering Talbot's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.*

### D.   Issues on Appeal

Talbot raises three issues on appeal:

1.   The ALJ failed to properly evaluate Talbot's mental impairments.

2.   Substantial evidence does not support the ALJ's step three analysis.

3.   Substantial evidence does not support the ALJ's physical RFC assessment.

Pl.'s Br., doc. 14 at 1. In essence, Talbot argues that the ALJ failed: (1) to provide a complete explanation as to her mental impairments; (2) to explain the finding that her migraines does not meet or medically equal the criterion of any listing at step three; and (3) to consider obesity and her need to nap during the day. *See id.* at 10, 15, 19-20. The Court, adhering to the deferential standard of review outlined below, will affirm the decision of the Commissioner.

## II.   LEGAL STANDARD

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Under the substantial-evidence standard, a court examines an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. *Biestek v.*

*Berryhill*, 587 U.S. 97, 102 (2019). Substantial evidence does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103; *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). In reviewing the record for substantial evidence, "[n]either the district court nor [the Third Circuit] is empowered to weigh the evidence or substitute its conclusions

for those of the fact-finder." *Williams*, 970 F.2d at 1182. To reverse the ALJ's findings and decision, the Court "must find that the evidence not only supports [a contrary] conclusion but compels it." *Immigr. & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

The question before the Court, therefore, is not whether Talbot is disabled, but whether the Commissioner's finding that Talbot is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 12-2417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner."). In determining that question, the Court must evaluate whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for

his decision beyond stating bare conclusions. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).

## III.    <u>DISCUSSION</u>

Talbot argues on appeal that the ALJ failed: (1) to provide a complete explanation as to her mental impairments; (2) to explain the finding that her migraines do not meet or medically equal the criterion of any listing at step three; and (3) to consider obesity and her need to nap during the day. *See id.* at 10, 15, 19-20. The Court addresses each argument in turn.

### A.    **Substantial evidence supports the ALJ's assessment of Talbot's mental health impairments.**

Talbot argues that the ALJ "may have considered the entire record and all of Ms. Talbot's symptoms, but the ALJ did not clearly explain or demonstrate it in his evaluation of Ms. Talbot's symptoms or the RFC analysis." Doc. 14 at 11. Specifically, Talbot contends that the "ALJ was required to consider the effect of a claimant's non-severe impairments on her ability to work." Pl.'s Reply Br., doc. 21 at 8. A review of the ALJ's decision and the record reveals that the ALJ has fully considered the record and explained reasons why Talbot's mental health impairments

did not warrant limitations. *Biestek*, 587 U.S. at 102; *Burnett*, 220 F.3d at 119.

The ALJ began to thoroughly review and explain why Talbot's depressive disorder and anxiety do not rise to the level of severe impairment at step two of the analysis. *See* doc. 9-2 at 20. In that discussion, the ALJ analyzed four broad functional areas from the listings of impairments, citing treatment records that support the finding that Talbot's mental impairments cause no more than mild limitation in any of the functional areas. *Id.* at 21. The ALJ further considered the non-severe mental health impairments in the RFC determination. The ALJ discussed Talbot's self-reported symptoms of anxiety, but noted treatment records that Talbot "overall feels well except some sleep disturbance and mild depression." *Id.* at 26. The ALJ also emphasized that the claimant never underwent any formal mental health treatment. *Id.* at 29. As for the medical opinion evidence, the ALJ sufficiently "weave[ed] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); *see* doc. 9-2 at 29-30 (considering two agency psychological consultants and Dr. Simons).

Page 11 of 17

Although Talbot asks the Court to further consider her self-reported symptoms and Dr. Simon's examination (doc. 21 at 6-7), the ALJ has clearly already considered this evidence in crafting the RFC. *See* doc. 9-2 at 24 (considering Talbot's self-reported symptoms), 29-30 (evaluating Dr. Simon's examination). And this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. The Court, therefore, finds that the ALJ's consideration of Talbot's mental health impairments are supported by substantial evidence. *Consolo*, 383 U.S. at 620 ("the possibility of drawing two inconsistent conclusions does not prevent [the ALJ's decision] from being supported by substantial evidence.").

**B.    Substantial evidence supports the ALJ's step three analysis.**

Talbot next argues that the ALJ "did not properly consider Listing 11.02 in accordance with SSR 19-4p." Doc. 14 at 11. Specifically, Talbot argues that the ALJ "did not adequately address Listing 11.02 and SSR 19-4p." *Id.* at 12.

At step three, the burden is on the claimant to establish that his impairment meets or equals a listed impairment. *Poulos v. Comm'r of Social Security*, 474 F.3d 88, 92 (3d Cir. 2007). The claimant must present

"medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Under SSR 19-4p, primary headache disorder "is not a listed impairment in the Listing of Impairments," but may "alone or in combination with another impairment(s), medically equal[ ] a listing." 2019 WL 4169635, at *7 (S.S.A. 2019). For migraines, listing 11.02 "is the most closely analogous listed impairment," and a person with migraines "may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D . . . .)." *Id.* Listing 11.02, paragraphs B and D, respectively, require symptoms occurring at least once a week and once every two weeks, for at least three consecutive months despite adherence to prescribed treatment. *Id.*

Here, the ALJ has correctly determined that Talbot has failed to demonstrate that she meets or equals listing 11.02. *See* doc. 9-2 at 23. At step three, the ALJ "need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements." *Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008); *Jones v. Barnhart*,

364 F.3d 501, 505 (3d Cir. 2004) (noting that the ALJ need not "use particular language or adhere to a particular format in conducting his analysis," at step three).

The ALJ explained that "no acceptable medical source has stated the opinion that the claimant's migraines medically equal the requirements of this Listing." Doc. 9-2 at 23. That explanation, while conclusory, is supported by the record. *Id.* at 25 (citing progress notes which report Talbot not having had a migraine in over six months), 27 (citing ER records showing Talbot complained of a headache but upon re-evaluation was discharged after she was feeling better and wanted to go home).

Critically, Talbot testified at the oral hearing that she has migraines "[a]bout once a month." Doc. 9-2 at 58. Under both paragraphs B and D of listing 11.02, which, as Talbot recognizes, applies here (doc. 14 at 13), Talbot must exhibit migraines at least once a week (11.02 B) or once every two weeks (11.02D) for at least three consecutive months despite adherence to prescribed treatment to meet or equal the listing. SSR 19-4p, 2019 WL 4169635, at *7. Even though the ALJ's step three analysis was not elaborate, in light of the "abundant evidence supporting

the position taken by the ALJ, and comparatively little contradictory evidence," the claimed error, if error at all, is at worst harmless and does not warrant a remand. *Thompson v. Colvin*, No. 13-1311, 2015 WL 1198103, at *20 (M.D. Pa. Mar. 16, 2015), quoting *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006).

### C.    Substantial evidence supports the ALJ's assessment of Talbot's physical RFC assessment.

Finally, Talbot argues that the ALJ failed to properly evaluate Talbot's obesity. Specifically, Talbot contends that a "holistic analysis of how Ms. Talbot's obesity interacted with her other impairments and limitations was missing from the ALJ's decision." Doc. 14 at 18, citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

The Court of Appeals for the Third Circuit has previously dealt with a similar line of argument. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). The Third Circuit held in *Rutherford* that a claimant's generalized assertion that obesity affects her overall symptoms was insufficient to require remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments. *Id.*; *Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 132 (3d

Page 15 of 17

Cir. 2021) (rejecting claimant's generalized response that obesity would "obviously negatively impact" impairments); *see also Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020). The same is true in this case.

The ALJ relied on voluminous medical evidence to determine Talbot's limitations and impairments. *See* doc. 9-2 at 23-29 (discussing medical records spanning two years). The ALJ also considered Talbot's obesity in his five-step analysis. *See* doc. 9-2 at 19 (finding obesity to be a severe impairment), 26 (citing examination which noted Talbot to be obese). The ALJ explained, however, that "there is no indication in the medical evidence of record that the claimant's obesity increases the severity of her coexisting impairments." *Id.* at 23. The ALJ, therefore, has sufficiently considered obesity in determining Talbot's limitations and impairments. *See Carter*, 805 F. App'x at 143 (finding that the ALJ's opinion, which directly mentioned obesity as a diagnosis, is more than enough to conclude that the ALJ was sufficiently alerted to a claimant's obesity).

Talbot's assertion that "common sense reflect[s that] obesity affects or accentuates these kinds of symptoms," mirrors the kind of generalized

arguments that the Third Circuit has rejected. *Rutherford*, 399 F.3d at 553; *Cosme*, 845 F. App'x at 132. Talbot also never raised obesity as worsening her physical impairments, even given ample opportunity at the oral hearing. *See* doc. 9-2 at 39-73; *see also Rutherford*, 399 F.3d at 553 ("Rutherford never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments."). Because Talbot "has not specified how [obesity] would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight" exacerbates her limitations, the Court finds that remand is unwarranted. *Rutherford*, 399 F.3d at 553.[2]

## IV.   <u>CONCLUSION</u>

Accordingly, the Commissioner's decision will be **AFFIRMED**.

An appropriate order follows.

Date: March 27, 2026                    <u>s/*Sean A. Camoni*</u>
                                        Sean A. Camoni
                                        United States Magistrate Judge

---

[2] The Court has considered Talbot's remaining argument that the ALJ failed to evaluate her "need to nap during the day." Doc. 14 at 20. As the Commissioner correctly points out, the record does not establish Talbot's "need to nap" as a medical impairment and "the ALJ need not include limitations in the RFC that are not credibly established by the evidence." Def.'s Br., doc. 20 at 33.